UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. Action No. 6:17-CR-40-CHB-9 |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTIAN OMAR TORRES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Following a four-day trial in November 2018, a jury found defendant Christian Omar

Torres guilty of conspiracy to traffic in methamphetamine and marijuana. [R. 458]. Torres was

sentenced to a total term of 168 months imprisonment, below the applicable guidelines range of

188–235 months. [R. 588; R. 630 at 107-09]. On direct appeal, Torres raised one issue—a

challenge to the admission of evidence that he was arrested for drug trafficking in New Mexico

during the conspiracy. [R. 661, p. 2]. The Sixth Circuit rejected that claim and affirmed in April

2020. *Id*. at 6.

Torres now seeks relief from his conviction and sentence by Motion to Vacate under 28

U.S.C. § 2255. [R. 713]. Torres argues that:

(1)    defense counsel Jeffrey Darling rendered ineffective assistance because, while the government offered a plea deal just hours before the trial commenced, Darling did not convey that offer to Torres, *Id*. at 4;

(2)    prosecutor William Dotson violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose prior to trial a report from authorities in Georgia indicating that Torres had confessed to drug trafficking, *Id*. at 5;

(3)      the prosecutor's failure to disclose the statement from Georgia and his counsel's failure to convey the plea offer rendered his trial unfair and unjust, *Id*. at 7; and

(4)      the undersigned displayed bias in favor of the prosecution through comments about the plea offer and the FBI report from Georgia, *Id*. at 8.

Torres indicates that he did not raise these issues on direct appeal but asserts that he could not do so because he did not have trial transcripts and because the prison was on lockdown for an extended period due to the COVID-19 pandemic.[1] *Id*. at 4–8.

The government counters that—with the exception of his ineffective assistance claim—Torres's claims are procedurally defaulted because he could have raised them on direct appeal but did not. [R. 730, pp. 9, 13]. The government further contends that Darling did not provide ineffective assistance because he actually conveyed the plea offers made by the government and Torres flatly rejected them. *Id*. at 2–9. Even if the *Brady* claim were not procedurally defaulted, the government argues that no *Brady* violation occurred because Torres already knew that he had confessed in Georgia, the government did not "suppress" the report describing his confession, the report was not exculpatory, and no prejudice resulted from the late disclosure because the government voluntarily agreed not to use the report and the Court expressed an intent to suppress it if it had. *Id*. at 9–13. Finally, the government posits that even if the claims were not procedurally defaulted, Torres's assertions that the trial was unjust and tainted by partiality are predicated upon his meritless *Brady* claim, and therefore fail on their own terms. *Id*. at 13–14.

Torres could have filed a reply to the government's response, *see* [R. 720, p. 2], but he did not. Instead, he filed a motion requesting the appointment of counsel, stating that an attorney

---

[1] Torres was represented by counsel on direct appeal, who did not assert these claims in Torres's appellate brief. *See United States v. Torres*, No. 19-5630 (6th Cir. 2019) [R. 21 therein].

could more readily communicate with the Court and opposing counsel and could marshal arguments in support of his motion.  [R. 732; R. 732–1]

## I.  Motion to Appoint Counsel

The Court first considers Torres's request for counsel. There is no constitutional right to appointed counsel in habeas corpus proceedings. *Kissner v. Palmer*, 826 F.3d 898, 905 (6th Cir. 2016) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Rather, the appointment of counsel is a matter within the Court's discretion. 28 U.S.C. § 2255(g) ("[I]n all proceedings brought under [§ 2255], and any subsequent proceedings on review, the court may appoint counsel[.]"). By statute, the Court may appoint counsel when "the interests of justice so require ... [to] any financially eligible person who is seeking relief under section ... 2255." 18 U.S.C. § 3006A(a)(2)(B); *see also Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) ("The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require."). Circumstances may warrant an appointment when the petitioner "has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim." *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004). On the other hand, appointment is not called for if "the issues raised are not unusually complex either legally or factually, and when the merits do not appear colorable." *United States v. Baker*, 586 F. App'x 458, 460 (10th Cir. 2014) (citation omitted).

The interests of justice do not militate in favor of appointing counsel for Torres. Post-conviction proceedings inherently involve some level of complexity, but Torres has represented himself adequately thus far. He filed his own *pro se* § 2255 Motion, [R. 713], objected to a finding that he impliedly waived the attorney-client privilege, [R. 723], moved for the disqualification of government counsel, [R. 727], sought reference of this matter to a magistrate

judge, [R. 728], and sought the appointment of counsel, [R. 732]. In most of these filings Torres has cited to pertinent statutes, procedural rules, and court decisions. Through these submissions, Torres has shown that he can adequately present his claims without the service of an attorney. The factual or legal issues presented in this matter are not overly complex and can be decided on the record presented. Finally, Torres does not point to any other exceptional circumstance which would justify the appointment of counsel. The Court will therefore deny this motion.

## II. Background

The events giving rise to Torres's § 2255 claims occurred shortly before and during the first days of his trial in November 2018. Still, some general background puts those events in context. Between November 2016 and July 2017, Torres was a participant in a conspiracy to sell marijuana and methamphetamine. [R. 334, p. 2; R. 458]. In February 2017, Torres and another man were arrested in New Mexico with 25 pounds of marijuana in their car. [R. 580, pp. 130–31]. Torres gave a statement to New Mexico authorities admitting his possession of those drugs. [R. 535, p. 2; R. 630, p. 70]

A year later Torres was indicted in this Court for his role in the conspiracy, and the Court issued a warrant for his arrest. [R. 125; R. 127]. In March 2018, Torres was arrested in Atlanta, Georgia. *See United States v. Torres*, No. 1: 18-MJ-242-LTW (N.D. Ga. 2018) [R. 2 therein]. At that time, Torres apparently confessed his role in the drug trafficking conspiracy to agents of the Federal Bureau of Investigation in Atlanta. *See* [R. 535, p. 2; R. 630, p. 69]

Prior to trial, several members of the conspiracy reached plea agreements with the government in this case. [R. 268; R. 278; R. 391; R. 410; R. 411; R. 421; R.428; R.438]. On September 17, 2018, Darling solicited a plea offer for Torres from the government. Assistant United States Attorney William Dotson made an offer that would have yielded a guidelines range

of 168–210 months, but Torres "rejected it out of hand." [R. 730-1, p. 2 (Aff. of Jeffrey Darling)]. Four days later, Dotson asked Darling if Torres was interested in trying to provide substantial assistance to the government, but Torres told Darling that "he was not willing to cooperate against the two remaining defendants, both of whom were good friends." *Id*. Thus, Torres and the two others proceeded to trial scheduled to begin on Monday, November 26, 2018. [R. 333]

On the weekend before trial, Elizabeth Hughes (who represented Defendant Marco Antonio Valencia-Fiesco) and Wayne Roberts (who represented Defendant Alfredo Martinez) were in communication with Darling as the three attorneys prepared for trial. [R. 630, p. 68]. That Saturday afternoon, Dotson sent separate e-mails to Hughes and Roberts indicating that if their clients were willing to plead guilty, "they would likely be safety valve eligible, which given acceptance of responsibility would give them a guideline range of 135 to 168 [months]." *Id*. On Sunday afternoon, Hughes forwarded Dotson's e-mail to Roberts and Darling, and asked if they too had received the same or a similar e-mail from Dotson. Roberts had received a similar e-mail with a plea offer, but Darling had not. *Id*. at 68, 79. On Monday morning, before the start of the trial, Dotson told Darling that he meant to send the same plea offer to him for Torres and indeed thought he had done so. Darling characterized the omission as an unintentional "email glitch" on Dotson's part. *Id*. at 69. Darling communicated the plea offer to Torres, but Torres rejected it.[2]

On the Sunday before trial, Dotson had also sent an e-mail to Hughes which included a copy of a report from the FBI's Atlanta office regarding Torres's arrest in March 2018 and his

---

[2] *See* [R. 535, p. 2 ("Mr. Torres, along with the other two defendants, received a plea offer on the Saturday before the Monday trial. ... Mr. Torres rejected the plea[.]"); R. 730–1, p. 3 (Aff. of Jeffrey Darling) ("[C]ounsel advised Torres of the plea offer as soon as counsel spoke with AUSA Dotson the morning before trial, at which time he confirmed that Torres could plead to something that would realize a guidelines range of 135-168 months ... Torres again rejected this.")]

confession to playing a role in the conspiracy. [R. 630, p. 69]. As before, Hughes forwarded this e-mail to Darling. *Id.* And, as before, on the first day of trial on Monday, Dotson indicated that he meant to send the same information to Darling and thought that he had done so. *Id.* He further agreed that he would not use the Georgia confession in his case in chief but reserved the right to use it for impeachment purposes if necessary. *Id.* at 69–70, 77–78.

After the second day of trial had concluded on Tuesday, Darling received another report from Dotson regarding the 2017 arrest of Torres and Valencia-Fiasco in New Mexico and Torres's confession in that instance. *Id.* at 70. Dotson told Darling that he had only just received the report the day before, and provided it as soon as he was able. *Id.*; [R. 580, p. 2]. Dotson again agreed that he would not use the report in his case in chief. [R. 630, pp. 70, 78; R. 580, p. 2]. The Court held that the statements would be excluded in light of their late disclosure and the government's voluntary agreement on the point. [R. 580, p. 7]

Darling relayed this sequence of events at some length during the sentencing hearing in May 2019, with Torres present. [R. 630, pp. 68–71]. Darling, arguing for some leniency in sentencing for his client, contended that had he been aware of the two confessions earlier in the case, he would have convinced Torres to plead guilty. [R. 535, p. 3 ("[H]ad counsel known about the confessions, he is absolutely certain he would have convinced Torres to enter into a Plea Agreement that would have shaved years off his recommended guideline range.")]. He also argued that there was a chance that Torres would have testified on his own behalf at trial, but clearly would not do so once he became aware of the existence of the confessions. [R. 630, p. 71]. The Court then confirmed its understanding of the particulars of what had transpired. *Id.* at 77–80. Torres gave his allocution immediately after this exchange. At that time, Torres made no objection to Darling's explanation of what had happened, including Darling's statement that

he had conveyed the plea offer to Torres on Monday morning. *Id.* at 80–81. Indeed, earlier in the hearing Torres indicated that he had discussed the presentence report with Darling and that he was satisfied with Darling's representation during the case. *Id.* at 10.

In its statements prior to imposing the sentence, the Court indicated that the government could have exercised greater diligence in obtaining the reports of the arrests in both New Mexico and Georgia and providing them to the defense. *Id.* at 83, 85. However, the government did provide them to the defense promptly once they were eventually obtained. *Id.* at 83, 86. Further, the government had agreed not to use either statement offensively, and the Court had indicated that they would not be allowed to be introduced at trial. *Id.* at 84.

Addressing Darling's sentencing arguments directed at surprise and prejudice regarding the late disclosure of the arrest reports, the Court first noted that;

> Clearly Mr. Torres knew if he had made any statements ... and could have advised his counsel. I mean, he clearly knew that he talked to the agents in Georgia. He clearly knew that he talked to the agents in New Mexico.

*Id.* at 85. The Court also indicated its agreement with Darling that the record did not suggest that Dotson had intentionally withheld the reports prior to trial. *Id.* at 86 ("I do not believe the United States had those statements or even knew anything about them prior to trial."). As for the plea offers, the Court noted that last-minute plea offers are not uncommon, and that "... no one asked for additional time to review them. And, you know, certainly the Defendants decided to proceed to trial and, you know, take that chance ...ultimately no continuance was requested . . . and *no one decided to take that deal even though it was communicated on the eve of trial.*" *Id.* at 87 (emphasis added). Again, at no time did Torres object to the Court's recitation of the events, including Darling's statement that he conveyed the government's plea offer to him before trial. *See id.* at 104–115. The Court evaluates Torres's petition with this background in mind.

- 7 -

### III.  General Standards

*Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (noting that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief") (citation omitted).

A federal prisoner may obtain post-conviction relief pursuant to 28 U.S.C. § 2255 if the federal court lacked jurisdiction to impose sentence, the sentence violates the Constitution or federal law, or the sentence exceeds the maximum permitted by statute. 28 U.S.C. § 2255(a); *see also McPhearson v. United States*, 675 F.3d 553, 558–59 (6th Cir. 2012). If the defendant alleges a constitutional violation, he must demonstrate that an error of constitutional magnitude occurred which had a "substantial and injurious effect or influence" on the proceedings. *Dimora v. United States*, 973 F.3d 496, 502 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1693, 209 L. Ed. 2d 468 (2021). If he alleges a non-constitutional error, the defendant must prove that the error constituted a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018). The § 2255 movant bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

### IV.  Claim # 1 - Ineffective Assistance of Counsel

Torres first argues that Darling provided ineffective assistance by not communicating to him the government's plea offer on the cusp of trial.  [R. 713, p. 4]. Although Torres did not make this argument on direct appeal, unlike other kinds of claims the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being

brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Before discussing that more-well-developed argument, the Court addresses Torres's single-sentence assertion that Darling lacked a strategy for the case and failed to investigate unidentified "errors." [R. 713, p. 4]. The only basis offered for this claim is that on direct appeal, the Sixth Circuit rejected as conclusory Darling's motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Id.* First, while *pro se* petitions are liberally construed, "active interpretation" of Torres's claims does not require the Court to make the petitioner's case for him. *See Clark v. Johnson*, 413 F. App'x 804, 817 (6th Cir. 2011) ("Though the pleading standard for *pro se* litigants is liberal, it is not without its limits, and does not 'abrogate basic pleading essentials in *pro se* suits.'"); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (*citing Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.), *cert. denied*, 464 U.S. 986 (1983) for the proposition that the "duty to be less stringent with [a] *pro se* complaint does not require court to conjure up [unpleaded] allegations.")). And Torres's conclusory allegations, wholly unsupported by any facts regarding Darling's investigation of the case or the specific errors he purportedly committed, are not sufficient to state a viable claim under § 2255. *Cf. United States v. Racey*, No. 20-5488, 2021 WL 5236835, at *3 (6th Cir. July 19, 2021) (denying as vague and conclusory movant's claim that there was a "possibility that if a proper and thorough investigation had been conducted, counsel might have discovered potential defenses to the charges.").

In any event, counsel's performance drafting a single motion on appeal does not remotely suggest broad ineffective performance investigating the facts of the case or developing a strategy for trial. Further, on appeal, Darling submitted a merits brief on the sole issue on appeal mentioned in his *Anders* motion, and the Sixth Circuit affirmed on multiple grounds. [R. 661].

- 9 -

Finally, Darling laid out his trial strategy plainly in his trial brief: that the evidence was not sufficient to establish that Torres was involved in a conspiracy with Michael Tutt to traffic in drugs. *See* [R. 373, pp. 1–2]. The facts offered by Torres do not suggest or establish that Darling was ineffective on appeal before the Sixth Circuit, let alone in proceedings before this Court.

The Court therefore addresses only the one argument Torres does develop: that Darling failed to communicate the plea offer. Specifically, Torres contends:

> Notably, I could have entered a plea of guilty should Attorney Darling had communicated the government's offer of 135 months made hours before my trial! Attorney Darling admitted to have received an e-mail from Attorney Hughes addressed as "CLIENT CHANGE THEIR MIND.  PLEASE LET ME KNOW." Alas, Attorney Darling claimed that he did not get that e-mail due to an alleged "e-mail glitch."  That is a lie and I am prejudiced by it!

[R. 713, p. 4 (cleaned up)]. Torres alleges not only that Darling received the e-mail from Hughes, but that "he failed to communicate a plea offer (like Mr Roberts did) before trial" and such failure prejudiced him. [R. 713, p. 7]

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 687–88. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting

of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

Deficient performance is considered prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. As to sentencing prejudice, there must be a "reasonable probability that, but for the errors of counsel, his sentence would have been different." *United States v. Geedi*, 490 F. App'x 755, 761 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 694).

Torres's claim is predicated upon two factual assertions. First, he alleges that Darling received an e-mail from Hughes regarding Dotson's plea offer. [R. 713, p. 4]. While Torres asserts that Darling denied receiving the email from Hughes, he did not.  During sentencing, Darling indicated that Dotson did not send him an e-mail with a plea offer for Torres, but that the next day, Hughes forwarded to him an e-mail that Dotson had sent to her with an offer for her client. [R. 630, p. 68]. Darling attaches this correspondence to his affidavit filed in response to Torres's motion.  [R. 730-2, pp. 1–2]. Torres's first allegation is therefore refuted by the record.

The real crux of Torres's claim is that Darling did not convey Dotson's "plea offer" of 135 months to him at all. [R. 713, p. 7]. Of course "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v Frye*, 566 U.S. 134, 145 (2012). The government counters that Dotson's communication was too preliminary, more in the nature of an

invitation to negotiate further than a specifically-defined "formal" offer. *See id.* at 146 (stating that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations."); *see also* [R. 730, pp. 3-4].

The Court is inclined to agree. In the e-mail Dotson sent to Hughes, "he discussed the fact that if, you know, the Defendants pleaded guilty, they would likely be safety valve eligible, which given acceptance of responsibility would give them a guideline range of 135 to 168." [R. 630, p. 68]; *see also* [R. 730-2, p. 2 (Nov. 24, 2018, e-mail from Dotson to Hughes) ("I know you've already broached this with your client, but he would likely safety valve if he pleads, making the difference a 5-level swing for him from 235-293 to 135-168.")]. But "the majority of courts addressing the issue have held that mere informal plea discussions are not enough to trigger counsel's duty to inform." *Boney v. United States*, No. CR 11-55-CFC, 2020 WL 1333285, at *4 (D. Del. Mar. 23, 2020) (collecting cases).[3] Here, none of the particulars contained in a formal plea offer were present. *See Robinson*, 2020 WL 5805513, at *3 (holding that no formal plea offer had been tendered where "the bulk of the terms of any potential plea agreement that the government may have formally offered—terms which would typically require substantial negotiation and compromise (e.g., whether defendant would agree to cooperate, whether the government would recommend a specific sentence, whether the government would agree to dismiss one of the two charges in exchange for a guilty plea)—remained undefined.");

---

[3] In *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019), the Sixth Circuit held that ineffective assistance claims were viable under *Frye* where the defendant asserted that his counsel's incompetence prevented the prosecution from making a plea offer at all.  Notwithstanding that holding, courts have held that *Byrd*, which presented an entirely different factual scenario and claim, leaves unsettled the separate questions as to whether the duty to convey a plea offer is limited to "formal" offers and what level of specificity and completeness is required for an offer to be considered a "formal" one.  *Cf. Robinson v. United States*, No. 3:13-CR-71-TAV-HBG-6, 2020 WL 5805513, at *5 (E.D. Tenn. Sept. 29, 2020).

*United States v. Petters*, 986 F. Supp. 2d 1077, 1082–83 (D. Minn. 2013) (holding that a government communication that did not discuss "the charges to which [the defendant] would acknowledge guilt, the factual basis for a plea, or restitution or forfeiture issues" did not contain "sufficiently definite" terms to constitute a formal plea offer). Such necessary details were absent from the terse exchanges between Dotson and Darling prior to trial.

Even if *Frye's* rule does extend to require counsel to convey the substance of preliminary and informal settlement discussions to the defendant, the record establishes that Darling did so. After Darling spoke with Dotson on Monday morning, he relayed the substance of that conversation to Torres the same day and Torres rejected the offer. [R. 535, p. 2; R. 630, p. 69; R. 730-1, p. 3 ("... counsel advised Torres of the plea offer as soon as counsel spoke with AUSA Dotson the morning before trial[.]")]

The question then is whether Torres's single-sentence statement in his Motion that Darling failed to communicate the plea offer, *see* [R. 713, p. 7], requires the Court to hold an evidentiary hearing to decide whether the offer was in fact conveyed. Torres did not file a formal motion requesting an evidentiary hearing. But, at the end of his petition, he did make a passing request for an evidentiary hearing "to verify the 'e-mail glitch' by a forensic computer data analysis" and to cross-examine "all counsels maliciously implicated." [R. 713, p. 12]. And even without a request, "an evidentiary hearing 'is required unless the record conclusively shows that the petitioner is entitled to no relief.'" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (*quoting Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b) ("[u]nless the motion and the files and records of the case conclusively show that the

- 13 -

prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.").[4]

However, a district court need not hold an evidentiary hearing "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (*quoting MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (cleaned up). The Supreme Court has long held that:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel).

Torres's claim that Darling did not convey Dotson's plea offer is contradicted by the record, rendering an evidentiary hearing unnecessary. In his sentencing memorandum, Darling explained that he had confirmed with Dotson on Monday morning, just before the start of the trial, that the plea offer was available to Torres, and that he had relayed the offer to Torres, who rejected it. [R. 535, p. 2]. Darling repeated this explanation of events during the May 2019 sentencing hearing, with Torres present. [R. 630, pp. 68–69]. Darling has confirmed these

---

[4] If a court concludes that an evidentiary hearing is required to decide the § 2255 motion, it must appoint counsel for the petitioner. *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts (Dec. 1, 2019) ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

communications to his client in his recent affidavit. [R. 730-1, p. 3]. During the sentencing hearing, the Court also walked through these events. *Id*. at 77–80. Torres gave his allocution immediately after this exchange, and he made no objection to the description of events given by Darling and the Court. [R. 630, pp. 80–81]. He also did not object when the Court stated on the record that "certainly the Defendants decided to proceed to trial and, you know, take that chance ... no one decided to take that deal even though it was communicated on the eve of trial." [R. 630, p. 87]. Instead, Torres remained silent. And at the outset of the hearing Torres stated that he was satisfied with Darling's representation. [R. 630, p. 10]

Under such circumstances, including Torres's notable silence during the sentencing hearing, an evidentiary hearing is not necessary. *Cf. Woolsey v. United States*, 794 F. App'x 469, 475 (6th Cir. 2019) (§ 2255 movant was not entitled to evidentiary hearing where his allegation that the prosecution simultaneously made several different plea offers was contradicted by the record, including hearing where prosecution relayed only a single plea offer); *Watts v. United States*, 841 F.2d 275, 277–78 (9th Cir. 1988) (holding that evidentiary hearing was not required to assess statement in § 2255 motion that prosecutor and judge had agreed that defendant would get sentence of 20 years or less and his co-defendant wife a sentence of 2 years or less, where defendant did not object during the sentencing hearing after judge sentenced him to life imprisonment and wife to 10 years, or in Rule 35 motion filed three months later).

Finally, Torres cannot show prejudice from the alleged failure to communicate the offer because he does not allege, and the record does not support, that he would have accepted it. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective

assistance of counsel." *Frye*, 566 U.S. at 147. Here, Torres rejected the government's first overture in September 2018, which was only slightly longer than the 135-168 month offer at issue, "out of hand." [R. 730-1, p. 2]. A few days later, the government offered to discuss a deal in exchange for substantial assistance, but Torres told Darling that "he was not willing to inculpate his co-defendants." *Id*. And when Hughes asked Darling on the weekend before trial if Torres had changed his mind about pleading guilty, Darling responded by e-mail that "Torres, as of Friday, has no interest in pleading guilty, and every intention of going on to trial." [R. 730-2, p. 1]. Torres rejected these plea offers notwithstanding considerable evidence against him, including testimony from co-conspirators and recordings of phone conversations. Torres's loyalty to his co-defendants and persistent rejection of the government's prior offers categorically undermines any "reasonable probability" that he would have accepted the offer. Indeed, Darling states that Torres rejected the plea offer on the morning of trial. [R. 730-1 p. 3]. Torres's claim that Darling failed to convey the government's plea offer, and was therefore ineffective, is without merit.

## V.  Claim # 2 – *Brady* Violation

Dotson sent Hughes a copy of the FBI's report from Atlanta, which detailed Torres's March 2018 arrest and confession, on the Sunday before trial.  Hughes forwarded this e-mail to Darling the same day. [R. 630, p. 69]. On Monday, Dotson acknowledged that he had intended to send this to Darling and agreed not to use the Georgia confession except if necessary for impeachment. *Id.* at 69–70, 77–78. The Court excluded the statements. [R. 580, p. 7]. At sentencing, Darling argued that he would have convinced Torres to plead guilty if he had known about the confessions well before trial began. [R. 535, p. 3]. Based on these events, Torres argues

that Dotson violated *Brady v. Maryland*, 373 U.S. 83 (1963) by not disclosing the statement he made in Georgia earlier. [R. 713, p. 5]

The government first contends that Torres procedurally defaulted this claim by failing to assert it on direct appeal. [R. 730, p. 9]. The Court agrees. The procedural default doctrine bars "claims that could have been raised on direct appeal, but were not." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). Therefore a "petitioner must raise his claims on direct appeal, otherwise, the claim is procedurally defaulted for purposes of § 2255 review." *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (quotation marks omitted). If a claim is defaulted, to present it in collateral review proceedings the petitioner must demonstrate that: (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 621 (1998). And demonstrating good cause requires the petitioner to point to "some objective factor external to the defense" that prevented him from raising the issue on direct appeal; "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486–87 (1986).

Here, Torres did not assert his *Brady* claim (or, for that matter, his claims that the trial was "unfair and unjust" or that the undersigned was not impartial) on direct appeal. Because he could have done so, but did not, all of these claims are procedurally defaulted. With respect to the *Brady* claim, this Court has previously explained:

> Generally, a true *Brady* violation "implicitly constitutes a *per se* excuse ('cause' and 'prejudice') for procedural default in habeas review." *Apanovitch v. Houk*, 466 F.3d 460, 473-74 (6th Cir. 2006). However, the rationale underlying the general rule is inapplicable when the defendant has the *Brady*-predicate at the time of a direct appeal (or non-existent, as it appears here). Documents suppressed at trial but disclosed before appeal would not fit within a presumed cause and prejudice

- 17 -

model because the defendant would have the evidence (and thus the claim) to present an appeal. *See e.g., Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. Oct. 16, 2014) ("Sullivan has procedurally defaulted on any *Brady* claim concerning these documents because his appellate counsel, who had these documents, did not raise them on direct appeal").

*United States v. Cooper*, No. 5:17-CR-35-KKC, 2020 WL 9550222, at *4 (E.D. Ky. Aug. 31, 2020), *report and recommendation adopted*, No. CR 5:17-35-KKC, 2021 WL 1592662 (E.D. Ky. Apr. 23, 2021). Such is the case here: because the factual basis for Torres's *Brady* claim was readily available on direct appeal, he cannot show "cause" for his failure to assert that claim. *Id*. at *5 (citing *Albrecht v. Horn*, 485 F.3d 103, 130 (3d Cir. 2007) (holding that the defendant did not "show cause" for his failure to raise a *Brady* claim "because these statements were available at the time of his direct appeal.")). And Torres does not contend that he is actually innocent of the underlying offenses. *See Bousley*, 523 U.S. at 621. He therefore cannot demonstrate cause and prejudice to permit him to pursue his procedurally defaulted *Brady* claim.

As with his *Brady* claim, the facts providing the basis for Torres's claims that his trial was unfair and that the undersigned displayed partiality were known and available to him on direct appeal. Because he did not raise those claims on direct appeal, they are procedurally defaulted. *Cf. McAuliffe v. United States*, 514 F. App'x 542, 550 (6th Cir. 2013) (holding that defendant's claim that he was denied his right to a fair trial under the Fifth Amendment was "doubly procedurally defaulted because McAuliffe did not raise it at trial or on direct appeal."); *see also United States v. Soler-Norona*, No. CIV. 13-14343, 2014 WL 3689644, at *8 (E.D. Mich. July 23, 2014) (same); *United States v. Myint*, No. 09-CR-20200, 2015 WL 5697590, at *2 (E.D. Mich. Sept. 29, 2015) (same); *Fletcher v. United States*, No. 109CR13001WLS, 2013 WL 12212771, at *2 (M.D. Ga. Aug. 15, 2013), *report and recommendation adopted*, No. 1:09-CR-13 (WLS), 2015 WL 13449663 (M.D. Ga. Jan. 12, 2015) (claim that district judge was not

- 18 -

impartial during plea withdrawal hearing is procedurally defaulted where defendant did not assert it on direct appeal). Torres does not point to any factor external to his defense that prevented him from asserting these claims on direct appeal, nor does he assert his actual innocence. Having failed to establish cause and prejudice for his failure to assert these claims on direct appeal, they are procedurally defaulted.

The government argues in the alternative that Torres's *Brady* claim is substantively without merit.  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. For the defendant to establish a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Paulus*, 952 F.3d 717, 724 (6th Cir. 2020) (*quoting Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Torres fails to establish a *Brady* violation in several respects. First, Torres, having made the confession himself, was aware of the statement without the need for disclosure of it by the prosecution. *See* [R. 630, p. 85 ("Clearly Mr. Torres knew if he had made any statements ... and could have advised his counsel.  I mean, he clearly knew that he talked to the agents in Georgia. He clearly knew that he talked to the agents in New Mexico.")]. There is "no *Brady* violation where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.'" *United States v. Castano*, 906 F.3d 458, 466 (6th Cir. 2018) (*quoting United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991)).

- 19 -

Second, Torres's confession was neither exculpatory nor impeaching. Because his confession admitted Torres's role in the charged criminal conduct, the disclosure of it to the defense would not have established a "reasonable probability that . . . the result of the proceeding would have been different." *United States v. Fields*, 763 F.3d 443, 458 (6th Cir. 2014). Finally, the government did disclose the Georgia confession, albeit only shortly before trial. A prosecutor has an affirmative "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). But even if the prosecutor discovers the information later in the case, hence delaying disclosure to the defense, *Brady* is not offended so long as the information is provided early enough for the defense to make use of it at trial. *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (holding that *Brady* "does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose."). For each of these reasons, Torres has failed to establish a *Brady* violation entitling him to relief.

## VI.  Claim # 3 – Trial was Unfair and Unjust

In his third ground for relief, Torres asserts that "[t]he record will show that such 'prosecutorial misconduct' justifies declaring a mistrial where it 'so infects the trial with unfairness as to make the resulting conviction a denial of due process.'" [R. 713, p. 7 (cleaned up)]. While this comment is clearly directed towards his *Brady* claim, Torres also states in the same paragraph that "Attorney Darling . . . failed to communicate a plea offer (like Mr Roberts did) before trial prejudiced me severely!" *Id*. This statement is clearly directed towards Torres's ineffective assistance claim. In response to this claim, the government states only that "his claims are based on his allegation that the government committed a *Brady* violation and, as explained supra, are meritless." [R. 730, p. 13]

- 20 -

While Torres sets forth his third ground for relief as a separate claim in his petition, it amounts to no more than a recasting of his *Strickland* and *Brady* claims under the broad rubric of fairness. However, fairness is precisely what *Strickland* and *Brady* are designed to ensure: affording a criminal defendant the effective assistance of counsel and imposing requirements and limitations upon a prosecutor's actions are both designed to ensure a fundamentally fair trial.

The Sixth Amendment guarantees a defendant "the right to the effective assistance of counsel." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). The purpose of the requirement is to assure "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred." *United States v. Cronic*, 466 U.S. 648, 656 (1984). That testing of the prosecution's case is designed to ensure a full and fair trial for the defendant. *United States v. Morrison*, 449 U.S. 361, 364 (1981) (noting that right to the assistance of counsel "is meant to assure fairness in the adversary criminal process.").

Likewise, when assessing the appropriateness of a prosecutor's conduct at trial, the ultimate focus is upon "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). And to establish grounds for federal habeas relief, the petitioner must demonstrate that the prosecutor's comments or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

So considered, Torres's third ground for relief merely reiterates his *Strickland* and *Brady* claims on different terms. Both claims are without merit for the reasons discussed above, and his

- 21 -

*Brady* claim is procedurally defaulted. The third ground in Torres's petition therefore does not

establish any independent basis for relief.

### VII.  Claim # 4 - Partiality

In his final ground for relief, Torres again sets forth the e-mail communications that

transpired on the weekend before trial regarding both the plea offers and the Georgia confession.

[R. 713, p. 8]. His claim states:

> Judge Claria Horn Boom's appearance of impartiality might be disqualified. Specifically, Judge Boom knew from Jury trial day one but displayed deep-seated favoritism to the counsel's ambiguous coercive trial techniques that made fair judgment impossible. Judge Boom fostered the appearance of impartiality threatened the purity of judicial process. ...

*Id*.  Although the claim is somewhat ambiguous on the point, the Court assumes that Torres

asserts that partiality was displayed towards the prosecution.

As noted above, Torres defaulted this claim by failing to assert it on direct appeal. *See*

*supra* Section V. In addition, Torres did not seek recusal of the undersigned, either during trial or

at sentencing. The record also establishes that the claim is also substantively without merit. As a

general rule, a reviewing court "will not ascribe bias to a district judge in the absence of evidence

that he has abandoned his role as an impartial arbiter." *Lilley v. BTM Corp.*, 958 F.2d 746, 753

(6th Cir. 1992). And "most questions concerning a judge's qualifications to hear a case are not

constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a

constitutional floor, not a uniform standard." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (citing

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986)). Still, "the floor established by the Due

Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias

against the defendant or interest in the outcome of his particular case." *Id*. at 904–05 (cleaned

up).

- 22 -

To establish that judicial bias rendered a trial fundamentally unfair, a defendant must generally point to events extrinsic to the trial itself. *Mason v. Burton*, 720 F. App'x 241, 245 (6th Cir. 2017) ("Judicial bias has traditionally been proved by citation to facts external to the judicial proceedings in question, such as a judge's pecuniary or personal interest in the outcome of the proceedings before her."). A party generally cannot establish bias simply because he is unhappy with a district judge's rulings. *United States v. Campbell*, 59 F. App'x 50, 52 (6th Cir. 2003) (holding that prior adverse rulings by a judge "will almost never serve as a valid basis for recusal and are most often simply grounds for appeal.") (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *see also Briggs v. Peck, Shaffer & Williams, L.L.P.*, 101 F. App'x 16, 18 (6th Cir. 2004) (same).

In this case, the Court made no rulings regarding the plea discussions except to note that such negotiations on the eve of trial are commonplace and that Torres had rejected the government's last offer and chose to proceed to trial. [R. 630, p. 87]. With respect to the prosecution's disclosure of Torres's confession in Georgia, the confession was inculpatory rather than exculpatory, Torres was aware of his own confession well before its disclosure by the government, and the prosecution disclosed it to the defense in advance of trial. Still, the Court admonished the government that it could have exercised greater diligence in obtaining the police reports and providing them to the defense. The Court also suppressed the confession. [R. 630, pp. 69–70, 77–78, 82–85]. The foregoing fails to establish that bias or partiality deprived Torres of a fair trial.

## VIII.  Certificate of Appealability

The Court will therefore deny Torres's motion for relief under § 2255 on both procedural and substantive grounds.  Still, a certificate of appealability may issue where a movant has made

- 23 -

a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, a movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court must make the "substantial showing" assessment on a claim-by-claim basis. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of ... claims"). And to issue a certificate of appealability for a dismissal on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that jurists of reason would not find it debatable that procedural default warrants the denial of all but Torres's ineffective assistance claim. The Court further finds that reasonable jurists would not find debatable the substantive denial of all four of Torres's claims. These claims are based upon factual assertions and characterizations that are contradicted by the record, or do not provide any viable legal ground for relief. The Court will therefore deny a certificate of appealability as to any claim asserted in the motion.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1.      The Court **DENIES** Torres's motion to appoint counsel, **[R. 732]**;

2.      The Court **DENIES** Torres's Motion to Vacate under 28 U.S.C. § 2255, **[R. 713]**; and

3.      The Court **DENIES** a certificate of appealability as to any claim asserted in Torres's § 2255 motion.

- 24 -

This the 30th day of March, 2022.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY